OPINION OF THE COURT
Carolyn E. Demarest, J.
Green Park Arms is a section 8 substantial rehabilitation dwelling organized pursuant to the United States Housing Act of 1937, as amended. (US Code, tit 42, § 1437f.) This particular housing program provides for rent subsidies, called tenant assistance payments, to be paid by the Department of Housing and Urban Development (HUD) to the owner, with the tenant paying the remaining portion of what is known as the “contract rent”. If the tenant’s assistance payments are properly terminated, the owner may seek to collect from the tenant “contract rent”, which is then called “market rent”. Of the circumstances that can lead to termination of tenant assistance payments, proper denial of recertification by the owner is one such event. In the case at bar, the assistance payments were discontinued because of the landlord’s failure to re-certify. As a result, the full market rent of $800 per month was allowed to accrue and respondent fell into arrears. Petitioner has even refused to accept tendered payments of *205 Mr. Inman’s $42 a month contribution to the rent since January 1, 1983. Petitioner now seeks a judgment, in this summary proceeding for nonpayment of rent, for a total of $4,902 for rent due through June 30, 1983. The issue is whether the landlord’s actions were proper.
Recertification is a process whereby the tenant’s income and household composition are re-examined so that the tenant’s rent and assistance payments can be adjusted in accordance with HUD standards. Recertification either takes place annually, upon the anniversary of the effective date of the tenant’s lease, or in the interim period between regularly scheduled recertifications if there is a change in either the tenant’s income or household composition. There are different notice requirements for regularly scheduled and interim adjustment recertifications. Since respondent’s lease term expired December 31, 1982, the procedure here was apparently treated as a routine annual event.
HUD publishes an “Occupancy Requirements of Subsidized Multifamily Housing Programs” handbook (Doc. 4350.3), which outlines the procedures to be followed by owners of substantial rehabilitation dwellings with regard to recertification and termination of assistance. It is established that the handbook-prescribed recertification and termination procedures were intended to be mandatory and not, as petitioner suggests, merely advisory. (Thorpe v Housing Auth., 393 US 268, 276; Staten v Housing Auth., 469 F Supp 1013.) It is also settled law that petitioner has, by its participation in the HUD program, become a government actor for purposes of the due process clauses of the Fifth and Fourteenth Amendments (Anderson v Denny, 365 F Supp 1254; McQueen v Druker, 317 F Supp 1122, 1128), and that recipients of Federal rent subsidies are protected by the United States Constitution from being deprived of these entitlements without an opportunity to be heard prior to termination of such benefits. (Ferguson v Metropolitan Dev. & Housing Agency, 485 F Supp 517, 521.)
Petitioner contends that it elected to terminate assistance for failure to supply necessary information for annual recertification and that it proceeded in accordance *206 with section 5-13 and figure 5-4(2) of the HUD handbook. Petitioner’s insistence that the termination of assistance was provoked by respondent’s failure to supply routine information is belied by the grounds actually given the tenant, i.e., harboring a pet, unauthorized occupants and failure to pay rent timely, all suggestive of termination for cause. Moreover, petitioner’s witness acknowledged that no recertification interview was held prior to termination of benefits and there is no documentation of any specific demand for particular information required for recertification. Furthermore, the actions of petitioner are not consistent with the language of the cited provisions.
Section 5-13 is captioned “Tenant Failure To Supply Interim Reports” (emphasis added) and relates back to section 5-8 which describes “Tenant’s Obligation To Report Interim Changes” (emphasis added) in household income and composition occurring “between the regularly scheduled recertifications”. Again contrary to petitioner’s assertions, it appears from the evidence that petitioner’s intent was actually to proceed, under sections 5-14, 5-15 and ultimately 5-16, to terminate respondent’s assistance by refusing to recertify him, for failure to supply information consistent with petitioner’s suspicions. However, apparently recognizing that the mandatory notice provisions had not been met and that its action in terminating was unlawful without first enlisting the support of HUD’s Inspector General for Investigation to confirm that the information supplied by respondent was fraudulent, petitioner attempts to sustain its failure to recertify on purely procedural grounds.
Taking petitioner at its word, and assuming, without deciding, that section 5-13 is applicable to annual recertification procedures, the petition must be dismissed for failure to comply with mandated procedures.
Section 5-13 states that when a landlord learns of a change in a tenant’s household (which is apparently petitioner’s prime complaint against respondent), it “must immediately notify the tenant in writing of the need to recertify”. Furthermore, “[t]he Owner’s notice should refer the Tenant to the lease clause which requires the interim review/adjustment, give the Tenant 10 calendar days to *207 respond to the Notice and advise the Tenant that his/her rent could be increased to the market rent if the 10 day deadline is not met.” The section suggests that a sample letter in appendix 26 “may be used for this purpose.” That letter incorporates all of the elements required to be contained in the notice. While it need not be implemented verbatim, the failure to include any one of the required elements is fatal.
Petitioner’s agents’ testimony respecting verbal discussions with the tenant (most of which apparently occurred after the termination of assistance in any event) and references to documents not offered in evidence or procedures not substantiated by the documentary evidence are all irrelevant to the question of proper notice under section 5-13. In fact, the only document offered by petitioner in satisfaction of the requirements of section 5-13 is a letter dated January 19, 1983, notifying the tenant that his tenancy had already been terminated upon the expiration of his lease. Making no references to any terms of the lease, petitioner cited, as reasons for “this action”, “repeated nonpayment of rent beyond any grace period, the possession of a pet in a unit; [sic] and permitting unauthorized persons to live in the unit”, and the alleged employment of the unauthorized person, with the consequent inference of “willful submission of false information”. No mention of increased rent is contained in this letter.
Having discovered that the first and only notice was sent to the tenant only after “action” had been taken, it seems superfluous to consider all the ways in which this notice is defective (cf. 24 CFR 881.607), not the least of which, of course, are the failure to comply with State law (see 24 CFR 881.607 [b] [1], [2]) and the use of but a single notice of an apparently retroactive termination (see Staten v Housing Auth., 469 F Supp 1013, 1016, supra). The petition must be dismissed, on procedural grounds.
However, testimony was also offered on both sides respecting the substantive merits of petitioner’s complaints. In response to landlord’s letter of January 19, tenant did reply to the landlord’s “findings” (actually unsubstantiated allegations) within a 10-day period. In his letter of January 26, 1983, Mr. Inman denied that he had repeatedly failed *208 to pay rent timely, noting that two prior nonpayment proceedings had been determined favorably to him. He further denied ever having kept a pet and challenged the landlord to prove his accusation. The landlord offered no admissible proof of either accusation.
As to the addition of an unauthorized occupant, in his January 26 letter, Mr. Inman noted that he had previously advised the landlord, in September, 1982, and again, in November, 1982, that his “wife” had taken up residence in his apartment although she was, concededly, not listed on the application. Ms. Donna Sivan, landlord’s employee responsible for clerical management of Green Park and certification and recertification of tenants, admitted on cross-examination that Mr. Inman’s apartment could be legally occupied by a fourth person and that he would be entitled to have his wife move in. Thus, even were the allegation true, the presence of Mrs. Inman would not have required the Inmans to remove.
However, in fact, the entirely credible evidence, submitted in the form of testimony by Marian Harrison, Mr. Inman’s alleged “wife”, was that although she is the mother of the two sons who do occupy Mr. Inman’s apartment with him, she has never been married to him or anyone else, and presently resides in her own home with two other sons unrelated to Mr. Inman. During Mr. In-man’s recent illness, Ms. Harrison did spend an extended period of time living in Mr. Inman’s apartment, caring for him and their two sons. It was this arrangement to which Mr. Inman referred in his letter. He testified that he referred to Ms. Harrison as his “wife” and acknowledged her as a tenant because he wanted to avoid problems with the landlord and other tenants. It was also established upon the tenant’s case that the third son, of whom the petitioner complained, was one of Ms. Harrison’s sons, age 13, who occasionally visited his half brothers.
Notwithstanding the procedural irregularities which' have necessitated the dismissal of the petition, I therefore further find the respondent entitled to judgment on the merits in that petitioner’s substantive allegations are not sustained by the proof. The tenant should be immediately recertified effective retroactively to January 1, 1983. Fol *209 lowing written notice that he has been recertified, Mr. Inman shall pay to petitioner his $42 per month contribution to the rent for eight months (Jan. through Aug.), less the $168 presently on deposit with the finance administrator which shall be released to petitioner forthwith.