JACKSON TERRACE ASSOCIATES, Petitioner, v HATTIE RICE et al., Respondents.

District Court of Nassau County, First District, September 21, 1988

**APPEARANCES OF COUNSEL**

*Horing & Welikson* for petitioner. *David A. Bythewood* for respondents.

**OPINION OF THE COURT**

ROBERT F. DOLAN, J.

This case has been submitted for determination on an agreed statement of facts. Respondents, husband and wife, are tenants in premises owned by petitioner pursuant to the provisions of Section 8 Existing Housing Program of the

United States Department of Housing and Urban Development (HUD) (42 USC § 1437f).

Petitioner commenced this summary proceeding alleging nonpayment of respondents' share of the contract rent as calculated by petitioner. Respondents have not paid the rent contending that it was not properly calculated.

Respondent Davie Rice is seasonally employed and when not employed receives unemployment insurance benefits. The issue to be determined by this court is how the unemployment benefits are to be calculated for the purpose of determining tenants' share of the rent.

The method of determining rents in "Section 8" housing is provided in the Occupancy Requirements of Subsidized Multifamily Housing Programs Handbook (Handbook) issued by HUD. Market rent is the amount of rent HUD authorizes the owner-landlord to collect and in Section 8 units, it is the same as contract rent. Contract rent is paid by the tenant, HUD, or both. (Handbook, at 3-17, para 3-23 [a], [b].) The amount of rent the tenant must pay the owner is the tenant rent or the total tenant payment (TTP). Assistance payment is the amount HUD pays the owner. (Handbook, at 3-18, para 3-23 [g], [h], [j].) The assistance payment and the TTP together equal the contract rent.

The procedures for determining the TTP are set forth in chapter 3 of the Handbook. One of the first steps is to determine the tenant's annual income (Handbook, at 3-3, para 3-2). The language causing this litigation is contained in paragraph 3-2 (b) on page 3-4, and reads as follows: "b. If a family indicates that income *might not* be received for the full 12 months (e.g. *unemployment insurance),* the owner should still annualize the income and advise the family to report any subsequent loss of income so that rents may be recalculated." (Emphasis added.)

It is petitioner's position that weekly unemployment benefits should be multiplied by 52 to arrive at the estimated annual income as required by the quoted paragraph. Tenant's position is that since Labor Law § 590 (4) allows only 26 weeks of full unemployment benefits, the multiplier should be 26 and not 52.

In this particular instance, the difference between the two methods is $117 per month (tenants' share per month is $183 as calculated by petitioner and $66 as calculated by respondent). Since "Section 8" housing is designed for low-income

families and many of these families receive unemployment benefits, and considering the large number of "Section 8" housing units in this State, the answer to this question could have considerable significance.

This court was unable to find any decisions, either State or Federal, which had previously addressed this issue.

Annual income is defined as the "gross income the owner *estimates* the household will receive during the 12 months following the effective date of the certification or recertification." (Handbook, at 3-3, para 3-2.) In order to ensure that tenants pay rents commensurate with their ability to pay, HUD requires owners to annually reverify tenants' incomes. (Handbook, at 5-1, para 5-3.) If it is determined that tenant has overpaid his rent, he will receive either a cash refund or a credit against future rents. (Handbook, at 3-31, para 3-38.)

The Handbook's use of the words "might not" in the quoted paragraph and the word "estimates" in the definition of annual income indicate to this court that there is not a great deal of certainty or precision in determining tenants' gross annual income.

The Handbook was prepared for national application and the procedures set forth were intended to be mandatory rather than advisory *(Green Park Assocs. v Imman,* 121 Misc 2d 204, citing *Thorpe v Housing Auth.,* 393 US 268, and *Staten v Housing Auth.,* 469 F Supp 1013). However, the specific purposes of Federal housing acts are to provide a decent home and a suitable living environment for families that lack the financial means of providing such a home without governmental aid. *(Thorpe v Housing Auth., supra.)*

It may well be that some States do allow full unemployment benefits to be paid for 52 weeks. That is not the case in New York State (Labor Law § 590 [4]). It seems to this court therefore that it would be irrational in annualizing a tenant's income to multiply weekly unemployment insurance benefits by 52 which, by statute, can only be paid for 26 weeks, and then require the tenant at a later date to have his rent recalculated by using an amount which had been statutorily mandated in the first place.

Applying the rule of reason, it is the decision of this court that the multiplier for full unemployment benefits to "annualize" tenants' income for "Section 8" housing is 26.

This decision is not contradictory to the mandatory requirements of the Handbook since the quoted paragraph uses the

words "might not" and in New York State full unemployment benefits *cannot* be received for 52 weeks.

Accordingly, the petition herein is dismissed and petitioner landlord is hereby directed to recalculate respondents' rental payments in accordance with this decision.