OPINION OF THE COURT
Rolando T. Acosta, J.
Petitioner landlord commenced this nonpayment proceeding *37 against respondent, a tenant recipient of a “Project-based” section 8 subsidy administered by the Department of Housing and Urban Development (HUD).[1]
Respondent moves for an order granting partial summary judgment for respondent and dismissing all claims for the HUD subsidy portion of respondent’s alleged arrears. Respondent’s motion presents a purely legal issue for the court’s review: whether the HUD regulations require project-based section 8 landlords to retroactively apply a rental assistance subsidy upon a tenant’s late recertification — a novel issue not resolved in any reported decision to date.[2]
Background
The petition alleges that respondent owes $16,643.71, which represents over nine months of market rent in the amount of $1,709 per month. Petitioner and respondent essentially agree that respondent was charged market rent commencing in October 2001 because of her failure to timely submit her annual recertification, as required by the HUD rules. Respondent alleged that she failed to timely recertify because of a cancer-related hospitalization during the recertification period.
When respondent ultimately submitted, however belatedly, the recertification documents to petitioner in this case, petitioner sent respondent a letter dated July 2, 2002, informing respondent that based upon their “recent review of [her] income and family composition, [her] rent has been adjusted to $158 * * * effective and due 10-1-01.” (Emphasis added.) This retroactive adjustment was also reflected in certain rent invoices sent to respondent following the date of the letter.
After the submission of the letter, however, petitioner commenced this nonpayment proceeding charging respondent not $158 per month effective October 2001, but the full market rent per month ($1,709) effective October 2001. Subsequent correspondence also informed respondent that (a) petitioner had determined that respondent’s cancer-related hospitalization does not constitute an extenuating circumstance which excused respondent’s failure to timely recertify, and (b) that *38 the “HUD Processing Center” was not going to retroactively apply the subsidy to October 2001, notwithstanding the July 2, 2002 letter. Petitioner claims that respondent had been informed that the promises contained in the July 2 letter were expressly contingent upon HUD’s determination.
There is no dispute that sometime after the commencement of this proceeding, respondent was duly recertified.
The Motion for Partial Summary Judgment
Respondent now moves for an order granting partial summary judgment for respondent and dismissing all claims for the HUD subsidy portion of respondent’s alleged arrears. Respondent argues that upon respondent’s admittedly late recertification, petitioner was obliged by the HUD rules to apply respondent’s subsidy retroactively to October 2001.
Petitioner opposes the motion. Although petitioner agrees that the court is required to adjudicate “the amount of outstanding rent arrears owed by the respondent,” petitioner contends that, as a preliminary matter, the court “lacks the requisite jurisdiction to review HUD’s decision ** * * den tying] * * * the retroactive re-instatement of the respondent’s section 8 subsidy.” Petitioner further argues that even if the court possessed the necessary jurisdiction, the motion should be denied because respondent’s subsidy was “effectively terminated” as a result of her failure to timely file her annual recertification documents. Further, following termination of the subsidy, HUD, according to petitioner, possessed the regulatory discretion “not to reinstate the subsidy retroactively” upon respondent’s belated recertification.
Because the court holds that the HUD regulations unequivocally mandate the retroactive implementation of a section 8 subsidy where the tenant, as the respondent here, submits a late recertification, the court grants the motion for partial summary judgment in favor of respondent. Petitioner’s claims for the HUD subsidy portion of respondent’s alleged arrears ($1,551 per month) are therefore dismissed and the matter is restored to the calendar on May 15, 2003, for the parties to conference the matter to determine the amount of the claimed arrears (i.e., the tenant’s share) to date.
Discussion
It is well settled in this state that when the owner of project-based section 8 units commences a nonpayment proceeding in housing court seeking a judgment for market rent based upon *39 the suspension or termination of a section 8 subsidy, housing court has jurisdiction to determine the propriety of the subsidy termination or suspension and the market rent charges. (1199 Hous. Corp. v McCartney, NYLJ, Jan. 28, 1997, at 25, col 3 [App Term, 1st Dept]; see also Bedford Gardens Co. v Rosenberg, NYLJ, Mar. 27, 1998, at 31, col 2 [App Term, 2d Dept] [housing court “properly dismissed landlord’s (nonpayment) petition on the ground that the notices of recertification and of termination of tenant’s subsidy did not comply with the requirements of the HUD Handbook and of tenant’s lease”]; Goldstein v Bush, NYLJ, Oct. 31, 2001, at 21, col 3 [Civ Ct, Kings County] [“Petitioner may not maintain a nonpayment proceeding based upon a suspension of a section 8 subsidy where the notices for recertification do not comply with the requirements of the HUD Handbook”]; 2921 Assoc. v Willis, NYLJ, July 20, 2001, at 20, col 5 [Civ Ct, Kings County] [“petitioner was not permitted to terminate the (section 8) subsidy and raise the rent to market rent” in this nonpayment proceeding where “petitioner failed to comply with the notice requirements of the HUD Handbook”].)
In 1199 Hous. Corp. (supra), the landlord commenced a nonpayment proceeding against the tenant, claiming that the tenant owed numerous months of market rent because her section 8 subsidy had been terminated. The tenant’s claim that the termination of her subsidy contravened the controlling federal regulations was disregarded by the housing court because the housing court believed that it was “without jurisdiction” to resolve such claims. Such claims, according to the housing court, had to be resolved in a “different forum.” (Id.)
The Appellate Term, however, reversed the housing court’s determination, finding, in pertinent part, that: “In this case, tenant may defend against the [landlord’s] rent claim on the ground that her subsidy was improperly terminated under the controlling federal regulations. This defense bears directly upon the amount of unsubsidized rent sought in the petition.” (Id.) The Appellate Term, therefore, remanded the matter to the trial court for a trial on the issues.
Fieldbridge Assoc. v Champion (NYLJ, Mar. 26, 1993, at 24, cols 5-6 [App Term, 2d Dept]) and 1543-75 Nostrand Assoc. v Flowers (NYLJ, Apr. 21, 1994, at 26, col 2 [App Term, 2d Dept]) are not to the contrary. In Fieldbridge and 1543-75 Nostrand, the Appellate Term held that housing court did not have the requisite jurisdiction to direct the newly joined parties, New York City Housing Authority (NYCHA) and Department of *40 Housing Preservation and Development (DHPD), respectively, to retroactively restore a tenant’s section 8 subsidy, because, inter alia, such relief was statutorily only available through an article 78 proceeding.
Those cases are distinguishable for two reasons. First, HUD is not a party to this proceeding and this court has no intention of directing HUD to do anything. Instead, the issue for the court is whether petitioner, the owner of project-based section 8 units, may properly charge a recertified tenant market rent when HUD regulations unequivocally mandate the retroactive implementation of the section 8 subsidy upon the tenant’s submission of a “past due recertification” (see discussion post).
Second, unlike recipients of NYCHA/DHPD section 8 subsidies, tenant recipients of project-based section 8 subsidies, such as respondent here, do not have any “procedure in place for review of project revocations of the particular subsidy at issue” and “[n]o hearing — formal or informal — [is] held.” (1199 Hous. Corp. v McCartney, NYLJ, Jan. 28, 1997, at 25, col 3 [App Term, 1st Dept].) Under these circumstances — “where there is no opportunity to be heard on the landlord’s claim at the administrative level” — project-based section 8 tenants should be “permitted to litigate the merits at the eviction proceeding” in housing court. (Id.)
Accordingly, contrary to petitioner’s contentions, this court has jurisdiction to determine the propriety of petitioner’s and HUD’s refusal to retroactively apply respondent’s subsidy following her concededly past-due recertification. The court must determine whether petitioner is entitled to market rent arrears based upon the rules that define the relationship and rights of the parties — namely, the HUD rules contained in HUD Handbook 4350.3 (“Occupancy Requirements of Subsidized Multifamily Housing Programs”).
The HUD Handbook sets forth the procedures which are to be followed by owners of project-based section 8 units regarding recertification and the suspension or termination of a subsidy. Significantly, owners of project-based section 8 units are required to comply with the procedures set forth in the Handbook, inasmuch as those provisions are mandatory. (See Model Lease for Subsidized Programs ffi[ 15-16; Greene Ave. Assoc. v Cardwell, 191 Misc 2d 775, 777-778 [Civ Ct, Kings County 2002]; Jackson Terrace v Rice, 142 Misc 2d 438 [Nassau Dist Ct 1988]; Green Park Assoc. v Inman, 121 Misc 2d 204, 205 [Civ Ct, NY County 1983]; see also Thorpe v Housing Auth. of Durham, 393 US 268, 273-275 [1969].)
*41 Chapter 5 of the HUD Handbook sets forth the procedures for the recertification of tenants in project-based section 8 housing. Recertification is required “[t]o ensure that tenants pay rents commensurate with their ability to pay” (Handbook ch 5-1), according to a prescribed formula. Tenants annually recertify by reporting to the landlord, upon prescribed forms, changes in income and household composition that occur between annual recertifications. This provides landlords with an opportunity to reverify tenants’ incomes and, if necessary, recompute the tenant’s subsidy (the “tenant assistance payment”) and the tenant’s share of the rent. (Handbook ch 5-1 [a], [b].) Prior to the deadline for recertification (the “cutoff” date), owners are required to send several notices to the tenant, directing him or her to recertify by a date certain. (Handbook ch 5-6.)
Should a tenant fail to recertify by the scheduled cutoff date, the owner may require the tenant to pay “market rent,” effectively suspending her section 8 subsidy, following the cutoff date. (See HUD Handbook chs 5-7, 5-6 [c], 5-5.) The owner may continue to charge the tenant market rent until she submits all of the documents necessary for recertification. (Id.) This market rent “penalty” is designed to “emphasize [ ]” to the tenant “the need for timely action on recertification.” (Handbook ch 5-7 [a]; see also Handbook ch 5-21 [c] [“raising a tenant to market rent for a month or so or until all required information is submitted, is maintained as a penalty for tenant failure to recertify in a timely fashion”].)
“Once the tenant submits the required information” and is recertified, however, “all adjustments in housing assistance payment and the tenant’s rent are made retroactively back to the scheduled effective [cutoff] date.” (Handbook ch 5-7 [h] [emphasis added].) For example, if it is determined after recertification that the tenant’s share of the rent should be increased, the “increase * * * must be retroactive to the scheduled [cutoff] date.” (Handbook ch 5-5 [b] [1] [emphasis added].) Likewise, if it is determined that the tenant’s share of the rent should be decreased, the “decrease in the tenant’s share of the rent must be retroactive to the scheduled [cutoff] date.” (Handbook ch 5-5 [b] [2] [emphasis added].) Finally, like the tenant’s share of the rent, the “new assistance payment must [oZso] be implemented retroactive to the date the recertification was scheduled to be effective.” (Handbook ch 5-5 [a] [emphasis added].)
Here, respondent is not raising any issues as to the propriety of the recertification notices and there is no question that re *42 spondent failed to recertify by the appropriate cutoff date of October 1, 2001. Under these circumstances, petitioner properly began to charge respondent market rent from the cutoff date in October until the date that respondent supplied the documents necessary for recertification. The only real question for the court is whether petitioner was required to retroactively implement respondent’s subsidy when respondent ultimately did recertify.
Given the unmistakable mandate of the HUD Handbook (see chs 5-7 [h], 5-5 [a], [b] [1], [2]), the court finds that petitioner was required to retroactively apply respondent’s subsidy following her concededly past-due recertification. Notwithstanding petitioner’s contentions to the contrary, petitioner does not have the “discretion” “not to reinstate the subsidy retroactively” under the circumstances of this case. Accordingly, the court grants the motion for partial summary judgment in favor of respondent and hereby dismisses petitioner’s claims for the HUD subsidy portion of respondent’s alleged arrears ($1,551 per month).
The Handbook’s unmistakable mandate aside, the requirement of a retroactive adjustment is consistent with the goal of recertification, which is “to ensure that tenants pay rents commensurate with their ability to pay.” (Handbook ch 5-1 [emphasis added].) In this case, petitioner has properly determined, after respondent’s recertification, that respondent has the “ability to pay” only $158 per month, given her income and family composition. Yet, in the absence of a retroactive adjustment, respondent would be required to pay $1,709 per month for over nine months (i.e., a whopping $16,643.71) — an amount which respondent clearly does not have the “ability to pay.”
Furthermore, the authority to temporarily suspend a subsidy and charge market rent was designed to hasten, as much as possible, the completion of a past-due recertification. (Handbook ch 5-7 [a].) It was not designed to hasten an eviction or the forfeiture of a long-term tenancy — which invariably would be the result if retroactive adjustments are not duly implemented. The market rent penalty simply requires the tenant to temporarily front the subsidy until recertification — that is, until the appropriate adjustments could be made. This temporary fronting of the subsidy places appropriate due pressure upon the tenant, who may be “confused” by the recertification “paperwork process” because of his “difficulty with the language” or “marginal educational background” (Handbook ch 5-21 [g]), to speedily complete the past-due recertification.
*43 Once the goal of the market rent penalty has been accomplished (i.e., once the tenant has recertified), however, the appropriate retroactive adjustments shall be made. Again, that is the mandate of the plain language in HUD Handbook chapters 5-7 (h), 5-5 (a), (b) (1) and (2). (See also Model Lease for Subsidized Programs 15 [“The Landlord may implement * * * [market rent] penalty only in accordance with the administrative procedures and time frames specified in HUD’s regulation, handbooks and instructions related to the administration of multifamily subsidy programs”].)
Under these circumstances, petitioner’s (and HUD’s) finding that respondent’s cancer-related hospitalization did not constitute an extenuating circumstance under HUD Handbook chapter 5-7 (b), merely afforded petitioner the right to continue to charge respondent market rent until respondent recertified. That no-extenuating circumstance finding did not relieve petitioner of its mandatory obligation to retroactively implement the subsidy upon respondent’s late recertification.
Apparently attempting to avoid the obvious import of the mandatory language of the foregoing Handbook chapters, petitioner argues that respondent’s subsidy was “effectively terminated” as a result of her failure to timely recertify. Although chapters 5-14 and 5-15 of the Handbook permit an owner to “remove” or “terminate” a subsidy for the “failure to recertify,” in this case respondent, having completed a past-due recertification, clearly did not “fail to recertify,” and therefore, chapters 5-14 and 5-15 of the Handbook are inapplicable. Notably, petitioner does not even cite the foregoing chapters in support of its argument. On the contrary, petitioner seems to rely upon the market rent penalty language of chapter 5-5 in support of its claim. Yet chapter 5-5 sets forth the procedures for, and is in fact entitled, “Past Due Recertifications,” and the language in that chapter unequivocally requires owners to retroactively apply a tenant’s subsidy following a past-due recertification.
Furthermore, petitioner’s claim that the subsidy was effectively terminated is belied by its own actions in the case— specifically, its July 2, 2002 letter, which informs respondent that her subsidy was going to be retroactively adjusted, and the rent invoices (reflecting the retroactive adjustment) which petitioner sent to respondent. These actions are inconsistent with the termination or removal of a subsidy and suggest that petitioner treated respondent’s failure to timely recertify as a “past due recertification” issue, resulting in a temporary *44 suspension of the subsidy under chapters 5-5 and 5-7, and not a termination of the subsidy under chapter 5-14 or 5-15. Indeed, petitioner does not even claim that it sent the requisite notices to respondent to terminate, rather than suspend, the subsidy.[3]
Petitioner’s claim that the subsidy was effectively terminated is also belied by petitioner’s consideration of respondent’s extenuating circumstances claim (based upon her cancer-related hospitalization). Such claims, addressed as they are in the “Past Due Recertification” chapter of the Handbook, are designed to avoid the imposition of a temporary market rent penalty under chapter 5-7, not the removal or termination of the subsidy under chapter 5-14 or 5-15.
In short, the court grants the motion for partial summary judgment in favor of respondent and dismisses petitioner’s claims for the subsidy portion of respondent’s alleged arrears ($1,551 per month).

. The premises are subject to the federal section 8 housing assistance payment program for new construction (project-based section 8). (See 42 USC § 1437.)

. This issue was presented in Goldstein v Bush (2001 NY Slip Op 50016[U] [Civ Ct, Kings County 2001]), but the court did not need to reach the issue because of its resolution of other dispositive issues in the case.

. In any event, the HUD Handbook provides that even where a tenant’s subsidy is removed or terminated pursuant to chapters 5-14 and 5-15, the subsidy “may be subsequently reinstated if ** * * the tenant submits the * * * information” required for recertification. (Handbook ch 5-17 [b].)